UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LIBERTY MUTUAL INSURANCE COMPANY,

           Plaintiff,   **COMPLAINT**

 -vs-

                 Case No. _____

UNITED STATES OF AMERICA,

          Defendant.

  Plaintiff Liberty Mutual Insurance Company ("Liberty") by its undersigned attorney, for its Complaint against Defendant United States of America ("USA") alleges as follows:

## PARTIES

  1. Plaintiff Liberty is a foreign corporation authorized to issue surety bonds in the State of New York, with a principal place of business located at 450 Plymouth Road, Suite 400, Plymouth Meeting, Pennsylvania 19462.

  2. Defendant USA was and is a governmental entity that acts through various agencies, including, upon information and belief, the Internal Revenue Service (the "IRS").

## JURISDICTION AND VENUE

  3. Jurisdiction of this action arises pursuant to 26 U.S.C. §7426 and 28 U.S.C. §1346(e).

  4. Venue lies in this Court by virtue of 28 U.S.C. §1402(c) and/or 28 U.S.C. §1391(e)(2).

## BACKGROUND

  5. Non-party ConMas Co., Inc. ("ConMas") was or is a New York corporation with its principal place of business located 19 Alice Street, Binghamton, New York 13904, and was or

is engaged in the construction business as a contractor performing masonry work.

**A.     The Vestal CSD Project**

6.      Upon information and belief, in or around May, 2008, ConMas entered into a construction contract with the Vestal Central School District, Vestal, New York ("Vestal CSD").

7.      Pursuant to the requirements of the contract, ConMas was required to provide a $923,111 labor and material payment bond in favor of Vestal CSD.

8.      Accordingly, ConMas requested that Liberty provide a labor and material payment bond on behalf of ConMas as principal and Vestal CSD as obligee.

9.      On or about May 27, 2008, Liberty executed a labor and material payment bond number 837043677, with Liberty as surety, ConMas as principal, and Vestal CSD as obligee (the "Vestal Payment Bond").

10.     Pursuant to ConMas's contract with Vestal CSD, and pursuant to applicable law, ConMas was required to pay its subcontractors and vendors.

11.     Upon information and belief, on or about December, 2009, ConMas encountered financial difficulties.

12.     Thereafter, ConMas failed to perform its obligations pursuant to its bonded contract resulting in various claims against the Vestal Payment Bond by certain subcontractors, suppliers and/or laborers of ConMas.

13.     ConMas' subcontractors and vendors made numerous claims for payment against the Vestal Payment Bond and Liberty has paid $177,395.75 in claims.

14.     Due to ConMas's breach of contract with Vestal CSD by not paying legitimate subcontractor and vendor claims, no additional funds are owed to ConMas by the terms of the contract between ConMas and Vestal CSD.

15.     The remaining contract funds from the contract with Vestal CSD are committed to

the payment of work performed by ConMas's subcontractors and vendors by the terms of the contract with ConMas and by applicable law.

16. The amount of the unpaid retainage held by Vestal CSD is $55,578, which is less than the $177,395.75 paid by Liberty on claims pursuant to the Vestal Payment Bond.

17. By principles of equitable subrogation, Liberty's claims to the unpaid retainage are superior to the rights of Defendant USA.

18. The remaining balance of the unpaid retainage is insufficient to fully repay Liberty as a surety.

**B.     The Delhi CSD - Capital Reconstruction Project**

19. Upon information and belief, in or about June, 2008, ConMas entered into a construction contract with the Delhi Central School District, Delhi, New York ("Delhi CSD") commonly referred to as the Capital Reconstruction Project.

20. Pursuant to the requirements of the contract, and pursuant to applicable law, ConMas was required to provide a $1,268,000 labor and material payment bond in favor of Delhi CSD for the Capital Reconstruction Project.

21. Accordingly, ConMas requested that Liberty provide a labor and material payment bond on behalf of ConMas as principal and Delhi CSD as obligee.

22. On or about June 23, 2008, Liberty executed a labor and material payment bond number 837043684, with Liberty as surety, ConMas as principal, and the Delhi CSD as obligee (the "Delhi Capital Reconstruction Payment Bond").

23. Pursuant to ConMas' contract with Delhi CSD, ConMas was required to pay its subcontractors and vendors.

24. Upon information and belief, in or around December, 2009, ConMas encountered financial difficulties.

3

25. Thereafter, ConMas failed to make payment to certain of its subcontractors and vendors on the Delhi CSD Capital Reconstruction project.

26. ConMas' subcontractors and vendors made numerous claims for payment against the Delhi Capital Reconstruction Payment Bond and Liberty has paid $177,395.75 in claims.

27. Due to ConMas' breach of contract with Delhi CSD by not paying legitimate subcontractor and vendor claims, no additional funds are owed to ConMas by the terms of the contract between ConMas and Delhi CSD.

28. The remaining contract funds from the contract with Delhi CSD are committed to the payment of work performed by ConMas' subcontractors and vendors by the terms of the contract with ConMas and by applicable law.

29. The amount of the unpaid retainage held by Delhi CSD for the Capital Reconstruction project is $64,688, which is less than the $181,991.04 paid by Liberty on claims pursuant to the Delhi Capital Reconstruction Payment Bond.

30. By principles of equitable subrogation, Liberty's claims to the unpaid retainage, as a performing surety, are superior to the rights of Defendant USA.

31. The remaining balance of the unpaid retainage is insufficient to fully repay Liberty as a performing surety.

**C.     The Delhi CSD - District Wide Improvements Project**

32. Upon information and belief, in or about September, 2007, ConMas entered into another construction contract with Delhi CSD commonly referred to as the District Wide Improvements Project.

33. Pursuant to the requirements of the contract, and pursuant to applicable law, ConMas was required to provide a $1,419,500 labor and material payment bond in favor of Delhi CSD on the District Wide Improvement project.

34. Accordingly, ConMas requested that Liberty provide a labor and material payment bond on behalf of ConMas as principal and Delhi CSD as obligee.

35. On or about September 4, 2007, Liberty executed a labor and material payment bond number 83709714 (the "Delhi District Wide Improvements Bond"), with Liberty as surety, ConMas as principal, and Delhi CSD as obligee.

36. Pursuant to ConMas's contract with Delhi CSD, ConMas was required to pay its subcontractors and vendors.

37. Upon information and belief, in or around December, 2009, ConMas encountered financial difficulties.

38. Thereafter, ConMas failed to make payment to certain of its subcontractors and vendors on the Delhi District Wide Improvement project.

39. Accordingly, ConMas' subcontractors and vendors made numerous claims for payment against the Delhi District Wide Improvements Bond and Liberty has paid $177,395.75 in claims.

40. Due to ConMas' breach of contract with Delhi CSD by not paying legitimate subcontractor and vendor claims, no additional funds are owed to ConMas by the terms of the contract between ConMas and Delhi CSD for the District Wide Improvement project.

41. The remaining contract funds from the contract with Delhi CSD are committed to the payment of work performed by ConMas' subcontractors and vendors by the terms of the contract with ConMas and by applicable law.

42. The amount of the unpaid retainage held by Delhi CSD is $51,996, which is less than the $118,118.37 paid by Liberty on claims pursuant to the Delhi District Wide Improvements Bond.

43.     By principles of equitable subrogation, Liberty's claims to the unpaid retainage, as a performing surety, are superior to the rights of Defendant USA.

44.     The remaining balance of the unpaid retainage is insufficient to fully repay Liberty as a performing surety.

**D.     The Elmira CSD Project**

45.     Upon information and belief, in or about February, 2008, ConMas entered into a construction contract with the Elmira City School District, Elmira, New York ("Elmira CSD").

46.     Pursuant to the requirements of the contract, and pursuant to applicable law, ConMas was required to provide a $4,803,000 labor and material payment bond in favor of Elmira CSD.

47.     Accordingly, ConMas requested that Liberty provide a labor and material payment bond on behalf of ConMas as principal and Elmira CSD as obligee.

48.     On or about February 7, 2008, Liberty executed a labor and material payment bond number 8370397234 (the "Elmira Payment Bond"), with Liberty as surety, ConMas as principal, and the Elmira CSD as obligee.

49.     Pursuant to ConMas' contract with Elmira CSD, ConMas was required to pay its subcontractors and vendors.

50.     Upon information and belief, in or around December, 2009, ConMas encountered financial difficulties.

51.     Thereafter, ConMas failed to make payment to certain of its subcontractors and vendors on the Elmira CSD project.

52.     ConMas' subcontractors and vendors made numerous claims for payment against the Elmira Payment Bond and Liberty has paid $177,395.75 in claims.

53.     Due to ConMas' breach of contract with Elmira CSD by not paying legitimate

subcontractor and vendor claims, no additional funds are owed to ConMas by the terms of the contract between ConMas and Elmira CSD.

54. The remaining contract funds from the contract with Elmira CSD are committed to the payment of work performed by ConMas' subcontractors and vendors by the terms of the contract with ConMas and by applicable law.

55. The amount of the unpaid retainage held by Elmira CSD is $292,316.19.

56. By principles of equitable subrogation, Liberty's claims to the unpaid retainage, as a performing surety, are superior to the rights of Defendant USA.

**E.     The IRS Tax Levies**

57. In or about January, 2011, but less than nine months from the commencement of the within action, Defendant USA, through the IRS, issued certain tax levies as against the respective remaining contract balances on the Elmira CSD, Vestal CSD and Delhi CSD projects, each in the amount of $61,901.96.

58. The levies are for alleged non-payment of payroll taxes by ConMas for the tax period ending December 31, 2009.

59. Upon information and belief, said levies were issued by the Binghamton, New York office of the IRS.

60. The tax levies filed for each of the four (4) distinct projects are for the same amount and cover the same tax period, demonstrating that none of the levies were calculated for the taxes owed from work performed and taxes owed as to any specific project.

**First Cause of Action**

61. Plaintiff repeats and re-alleges paragraph 1 through 60 above as though fully set forth herein.

62. ConMas entered into the above-referenced construction contracts with Elmira

CSD, Vestal CSD, and Delhi CSD (collectively the "Projects").

63. Pursuant to the requirements of the contracts, ConMas was required to provide labor and material bonds in favor of Elmira CSD, Vestal CSD and Delhi CSD.

64. Pursuant to its obligations under the payment bonds, Liberty paid payment bond claimants, consisting of laborers, suppliers and materialmen, who performed services and/or provided labor on the Projects.

65. At the time the levies were served by Defendant upon Elmira CSD, Vestal CSD, and Delhi CSD, ConMas had already defaulted on its obligations for the Projects. As a result, ConMas did not have any property rights, title or interests to the levied contract balances from the Projects.

66. By reason of Liberty paying laborers and materialmen from the Projects, Liberty became entitled to the payments due to ConMas at the time of default and entitled to the unearned contract balances.

67. In discharging its payment bonds' obligations on the Projects, Liberty became subrogated to the rights, title and interests of Delhi CSD, Vestal CSD, and Elmira CSD, each as subrogee/project owner, as well as to each claimant paid, with the result that the levied contract balances never become due or payable to ConMas.

68. By discharging the payment bond's obligations, Liberty's right, title and interest to the earned and unearned contract balances arose prior to, and are otherwise superior to the interests asserted by the Defendant.

69. Due to the taxpayer ConMas having no property right that a federal tax levy could attach, the levies served upon Vestal CSD, Delhi CSD, and Elmira CSD arising from purported tax obligations of ConMas were wrongful.

70. By reason of the foregoing, Liberty is entitled to judgment declaring that Liberty's rights to the levied contract balances are superior to the rights of Defendant in such property.

71. By reason of the foregoing, Liberty is entitled to recovery of the levied contract balances or judgments for the amount of said balances.

**WHEREFORE**, Liberty Mutual Insurance Company respectfully prays for relief as follows:

1. Injunctive relief prohibiting the United States of America from enforcing or pursing the levies wrongfully filed on the Elmira CSD project, the Vestal CSD project and the Delhi CSD projects;

2. Injunctive relief declaring Liberty Mutual Insurance Company's rights to the remaining contract balances on the Elmira CSD project, the Vestal CSD project and the Delhi CSD projects to be superior to the rights of the United States of America;

3. The costs and fees of this action; and

4. Such other and further relief as the Court deems just and proper.

February 28, 2011
Rochester, New York                                        **ERNSTROM & DRESTE, LLP**


 s/ Matthew D. Brown
Matthew D. Brown, Esq.
N.D.N.Y. Bar No. 105688
*Attorneys for Defendants*
180 Canal View Blvd, Suite 600
Rochester, New York 14623
(585) 473-3100
Mbrown@ed-llp.com